**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

---

MIDLINK LOGISTICS, LLC., a
Michigan Foreign Limited Liability Company,

Plaintiff,

v

CONSOLIDATED PROCUREMENT SOLUTIONS, LLC
A Florida Limited Liability Company,

Defendant.

Case No. 1:__ -CV-_______

Hon.

---

## COMPLAINT

Plaintiff, Midlink Logistics, LLC ("Midlink"), by and through its attorneys, Beebe Law Group PLLC, states for its Complaint against Consolidated Procurement Solutions, LLC ("CPS") as follows:

### INTRODUCTORY STATEMENT

1. Plaintiff, Midlink Logistics, LLC ("Midlink"), brings this action against Defendant, CPS, arising from CPS' intentional and wrongful conduct in contracting for transportation brokerage services without intending to pay for them. CPS knowingly permitted Midlink to perform the agreed-upon services, failed to pay for those services, and subsequently acknowledged its intention to withhold payment, causing Midlink substantial financial harm. Having exhausted its efforts to recover payment without litigation, Midlink now seeks relief for the damages sustained as a result of CPS' conduct in a court of law.

### PARTIES, JURISDICTION, AND VENUE

2. Midlink is a limited liability company having foreign registration in Michigan with its

principal place of business in Kalamazoo County, Michigan. Midlink has been operating strictly out of Michigan for more than fifteen years.

3. CPS is a limited liability company registered in the state of Florida since 2023. It conducts business with individuals and companies in Michigan and nationally.

4. This Court has subject matter jurisdiction over the claims herein pursuant to 28 U.S.C. § 1332(a) (1) because complete diversity of citizenship exists between plaintiff and defendant as companies incorporated and operating in different states, and the monetary value of the claim exceeds $75,000, exclusive of interest and costs.

5. Venue is appropriate because the actions giving rise to this matter occurred in the Western District of Michigan, Kalamazoo County, and both parties regularly conduct business in and through this part of the state.

## GENERAL ALLEGATIONS

6. Midlink is a transportation broker as it is defined under 49 U.S.C. §13102. Midlink arranges for transportation and shipment of goods for compensation. It is not a motor carrier. It merely arranges transportation by locating motor carriers rather than physically hauling freight or acting as a principal carrier.

7. CPS advertises itself as a business that offers tailored protein procurement and supply chain services centered around beef, pork, poultry, and food processing operations. At all relevant times, CPS conducted business with clients throughout the United States, including those in and around Michigan.

8. From June 13, 2026 to August 20, 2026, CPS provided load information to Midlink and accepted quotes from Midlink for Midlink to broker shipment for no less than twenty (20) separate loads, all containing different types of meat products, origins and destinations, and delivery dates.

(See load confirmation emails as Plaintiff's Exhibit 1). The loads all had different origin and destinations[1], however, Midlink arranged all of the shipments from its headquarters in Michigan.

9. Each load involved a separate offers and acceptance between the parties, with distinct pick up and drop off locations, and with subsequent performance by Midlink. (See Plaintiff's Exhibit 2 for a full "Customer Statement" for CPS).

10. With each load, Midlink was induced into performing the services with a promise of payment as agreed.

11. Prior to June 2026, the parties routinely and without incident conducted business in the manner indicated by Plaintiff's Exhibit 1, whereby CPS sent Midlink load information so that Midlink could calculate the price for services based upon previously agreed calculations, CPS accepted, and Midlink confirmed and arranged for a carrier to pick up and deliver the load.

12. For the loads that serve as the basis for this lawsuit, Midlink invoiced CPS for each of the loads, the invoices were received, and the amounts invoiced were never disputed. Throughout mid-June to August, CPS continued to request Midlink's services and Midlink continued to perform.

13. Despite continuing to contact Midlink to broker additional loads, CPS stopped paying its outstanding invoices in late June of 2026.

14. On October 7, 2026 after several attempts by Midlink to collect payment from CPS, a demand letter was sent to the leadership of CPS (Nick Burton & Josh Saterbo) with an itemization of the outstanding charges and the aging balance of $77,595.00.

15. In response to the demand letter sent by Midlink to CPS, CPS' had its legal counsel send a response to the demand indicating that CPS intentionally withheld payment and intended

[1] IL, IN, TX, NC, FL, MS, CA, SD, and SC.

to continue doing so. (See Plaintiff's Exhibit 3 – Second to last paragraph on the second page).

16. Through counsel, CPS asserted that it was entitled to withhold future payments to Midlink based on its allegation that Midlink, as broker, was responsible for the theft of an unrelated beef shipment on June 24, 2026.

17. The theft referenced by CPS arose from an entirely separate shipment, arranged at a different time and wholly unrelated to the loads, invoices, and payment obligations at issue in this matter.

18. That beef theft incident involved a highly sophisticated, coordinated cybercrime perpetrated by an organized cargo theft ring.

19. As CPS is aware, the perpetrators in the beef theft compromised motor carrier information maintained within the Federal Motor Carrier Safety Administration (FMCSA) system, hacked into the FMCSA system, and fraudulently altered the carrier's identifying information, including its account, insurance, and contact details allowing them to intercept loads intended for the legitimate carrier. By manipulating information in a federal database ordinarily relied upon by transportation brokers to verify carrier identities and credentials, the perpetrators were able to impersonate legitimate motor carriers, fraudulently secure transportation assignments, and ultimately intercept and steal a shipment of beef intended for one of CPS' clients. Midlink has not been found liable for this unrelated theft.

20. In addition, the shipper released the stolen load to the fraudster and CPS failed to place trackers on its cargo as is standard in the industry now that cargo theft incidents are on the rise, making it impossible to locate the load once it was stolen.

21. The police and FBI were contacted and that issue remains an ongoing criminal matter of which Midlink is not a party.

22. CPS knew, in advance of engaging Midlink, that it intended to withhold payment on future invoices without any legally cognizable connection between that unrelated beef incident and the transportation services performed subsequent thereto, or the amounts invoiced, in the present matter.

23. Midlink follows the same careful industry standard protocols with every shipment, never contracted with CPS to accept liability for stolen cargo, never had possession of the goods, and continues to assist with investigation of criminal activity.

**COUNT I**

***Fraud in the Inducement***

24. Midlink incorporates by reference each allegation contained above.

25. CPS represented to Midlink that it would pay Midlink for arranging transportation for the twenty (20) loads at issue.

24. At the time that CPS represented that it would pay for the services, CPS knew their statements to be false and that CPS had no intention of paying Midlink for the services.

25. CPS accepted the quotations and represented that it would pay for the services knowing that Midlink would act upon those representations and perform the services.

26. Midlink performed the services agreed upon.

27. CPS did not pay for the loads and services performed as itemized in Plaintiff's Exhibit 2.

28. CPS' failure to pay for the services performed by Midlink caused Midlink to incur damages exceeding $75,000.

29. Based on the parties' prior course of dealing, Midlink's reliance on CPS' representations was reasonable and Midlink had no reason to suspect that CPS would request

brokerage services with the intention of not paying.

*WHEREFORE*, Midlink requests this Court to:

A. Enter an order declaring that Midlink has met its burden of proof for Fraud in the Inducement;

B. Enter judgment in favor of Midlink against CPS for $77,595;

C. Award interest, costs, and attorney's fees to Midlink as consequential damages; and

D. Award such other relief to Midlink as the Court deems just and equitable.

**COUNT II**

***Breach of Contract***

30. Midlink incorporates by reference each allegation contained above.

31. The emails between Midlink and CPS indicate that the parties' normal process for entering into agreements for shipment of CPS' meat products involved the following steps: 1. request for quotation after CPS provided load information, 2. CPS' acceptance of the quote, 3. Midlink's performance (arranging for pick up and delivery of the goods).

32. Midlink and CPS followed this process for the loads itemized in Plaintiff's Exhibit 2. Each load was separately quoted (offer), accepted by CPS (acceptance), and arranged by Midlink (performance).

33. Midlink was not paid for any of these loads and suffered financial losses.

*WHEREFORE*, Midlink requests this Court to:

A. Enter an order declaring that CPS breached the parties' agreement for each of the twenty (20) loads;

B. Enter judgment in favor of Midlink and against CPS for $77,595;

C. Award interest, costs, reliance damages, and attorney's fees to Midlink; and

D. Award such other relief to Midlink as the Court deems just and equitable.

## COUNT III

***Anticipatory Repudiation***

***UCC §2-610 & MCL 440.2610***

34. Midlink reincorporates and realleges each allegation contained above.

35. Each quotation, acceptance, and performance constituted a separate agreement regarding the scope, cost, and timing of services.

36. Each time CPS placed another order, they did so knowing that they would not be paying for the previous order or any of the others placed in the future.

37. In response to Midlink's demand for payment, CPS indicated it would continue withholding payment to recoup losses from an unrelated load stolen more than a month earlier.

38. In its response, CPS unequivocally expressed its intent not to fulfill its contractual obligations regarding future performance. (See Plaintiff's Exhibit 3 – Responsive Letter from CPS' legal counsel).

39. To mitigate its damages, Midlink has suspended business dealings with CPS pending resolution of this matter.

WHEREFORE, Midlink requests this Court to:

A. Enter an order finding anticipatory breach on the part of CPS;

B. Enter judgment in favor of Midlink and against CPS for $77,595;

C. Award interest, costs, compensatory damages, punitive damages, and attorney's fees to Midlink; and

D. Award such other relief to Midlink as the Court deems just and equitable.

Dated: Respectfully Submitted,

/s/ ______________________________

Beebe Law Group, PLLC
Amber D. Ocean, Esq. (P66466)
Attorneys for Plaintiff
1971 E. Beltline Avenue NE, Ste.106, #401
Grand Rapids, MI 49525
(616) 322-0069
amber@beebelawgroup.com